UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NUMBER:   2:21-CR-131 JTM |
| | ) | |
| CALEB JAMES MOORE | ) | |
| | ) | |
| Defendant. | ) | |

### Defendant's Motion to Dismiss

Caleb James Moore, defendant herein, by and through counsel, Peter L. Boyles, files this motion to dismiss the instant proceeding charging him under 18 U.S.C. § 924(a)(1)(A).  Mr. Moore's motion to dismiss is based on the Second Amendment to the United States Constitution, the United States Supreme Court's recent holding in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and District Judge Robert Miller's October 31, 2022, opinion and order in *United States v. Holden*, 22-CR-30, ECF No. 32 (N.D. Ind. Oct. 31, 2022), finding 18 U.S.C. § 922(n), unconstitutional applying *Bruen* and dismissing the single count indictment brought under 18 U.S.C. § 922(a)(6).

### Argument Summary

On April 6, 2022, Mr. Moore plead guilty to a statute, § 924(a)(1)(A), that is no longer a legitimate constitutional criminal regulation post-*Bruen*.  As a result, Mr. Moore's conviction and the attendant imposition of punishment violates his Second Amendment rights.

Crucially, Mr. Moore is not contesting the facts as admitted at his change of plea hearing, averring that his conduct does not satisfy the elements of § 924(a)(1)(A), or raising an as-applied challenge here.  Rather, Mr. Moore's conduct and the broader factual record is immaterial to the

1

instant motion — § 924(a)(1)(A) is facially constitutionally invalid under the *Bruen* Second Amendment analytical framework. In moving to dismiss, Mr. Moore raises a facial challenge to § 924(a)(1)(A), and this Court need only to consider the statute's text and the recent *Bruen*-related case law, including law within this District, in resolving his dismissal request.

To be clear, Mr. Moore's instant motion is a claim that he, indeed anyone, is immune from prosecution, a finding of guilt, and government sanction under § 924(a)(1)(A), post-*Bruen*, because the statute cannot survive the history and tradition scrutiny test the Supreme Court now demands in analyzing firearm regulations. Accordingly, this Court should grant Mr. Moore's request to dismiss the proceedings on the basis that § 924(a)(1)(A) facially violates the Second Amendment.

In addition, Mr. Moore is not foreclosed from moving for dismissal at this juncture of the proceeding because he is raising a facial, Second Amendment challenge to § 924(a)(1)(A), and the recency of the *Holden* ruling provides ample good cause for why his facial challenge to § 924(a)(A)(1) is raised now. As a result, this Court should entertain Mr. Moore's motion to dismiss.

**Procedural Background**

On September 15, 2021, the government filed the Indictment against Mr. Moore, alleging assorted violations of § 924(a)(1)(A) in thirteen counts. *See* Indictment [DE 1]. On April 6, 2022, Mr. Moore plead guilty to count 3 of the Indictment pursuant to a written plea agreement. *See* [DE 19, 23].

On June 23, 2022, the Supreme Court issued *Bruen*, finding that a New York state firearm regulation violated the Second Amendment. On September 23, 2022, United States Probation ("USP") filed the Final Presentence Investigation Report ("PSR"). *See* [DE 54]. The PSR applied a 14 base offense level and a a four-offense level enhancement under U.S.S.G. § 2K2.1(b)(1)(B)

(firearm total). *See* PSR ¶¶ 25, 26. Neither party objected to the PSR at that time. Mr. Moore's sentencing hearing is now scheduled for November 8, 2022.

Since USP filed the PSR, on October 31, 2022, applying *Bruen*, Judge Miller, in *United States v. Holden*, 22-CR-30, ECF No. 32 (N.D. Ind. Oct. 31, 2022), held that § 922(n) is unconstitutional, and dismissed the single count indictment brought under § 922(a)(6). *Holden* is direct, apposite authority issued from within this District in support of Mr. Moore's motion to dismiss. To avoid a miscarriage of justice, this Court should entertain Mr. Moore's motion to dismiss and consider *Holden's* reasoning in support of dismissal before it imposes a potentially unwarranted, unconstitutional sentence here.

## Argument

1. <u>Mr. Moore is Permitted to Facially Challenge § 924(a)(1)(A) Post-Plea.</u>

As a preliminary matter, Mr. Moore is not seeking to withdraw his plea, and though Mr. Moore has plead guilty to count 3 and is awaiting sentence, he is not prohibited from moving to dismiss now.

   A. *Under the Menna-Blackledge Doctrine, Mr. Moore May Raise a Post-Plea Facial Constitutional Challenge to § 924(a)(1)(A).*

Under the *Menna-Blackledge* doctrine, "[t]he Supreme Court has held that certain kinds of constitutional objections may be raised after a plea of guilty." Fed. R. Crim. P. 11(a)(2), Notes of Advisory Committee on Rules (1983 Amendment). In *Class v. United States*, 138 S. Ct. 798, 802-07 (2018), the Supreme Court considered whether the defendant-petitioner's prior guilty plea foreclosed his direct appeal, which argued that his statute of conviction, 40 U.S.C. § 5104(e)(1), facially violated the Second Amendment. Applying the *Menna-Blackledge* doctrine, the Court permitted the defendant's direct appeal to proceed, despite the prior guilty plea. *See id.* at 802.

3

In allowing the facial attack appeal to proceed, the Court reasoned that "'a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute.'" *Id.* at 803 (quoting *Menna v. New York*, 423 U.S. 61, 63 n.2 (1975) (per curiam)). In *Class*, "[c]iting *Blackledge* and *Menna*, . . . [the Court] repeated that a guilty plea does not bar a claim on appeal where on the face of the record the court had no power to enter the conviction or *impose the sentence*[,]" *id.* at 804 (internal citation omitted) (emphasis added), or when the appeal "challenge[s] the Government's power to criminalize [the defendant's] (*admitted*) conduct." *Id.* at 805 (emphasis added). Indeed, in *Class*, the Court stated that sentencing courts had long countenanced post-plea constitutional facial challenges:

> The plea of guilty is, of course, a confession of all the facts charged in the indictment, and also of the evil intent imputed to the defendant. It is a waiver also of all merely technical and formal objections of which the defendant could have availed himself by any other plea or motion. But if the facts alleged and admitted do not constitute a crime against the laws of the [state], the defendant is entitled to be discharged . . .
> Decisions of federal and state courts throughout the 19th and 20th centuries reflect a similar view of the nature of a guilty plea. *See United States v. Ury*, 106 F.2d 28 (C.A.2 1939*)* (holding the plea of guilty did not foreclose the appellant, who argued that a statute was unconstitutional, from the review he now seeks); *Hocking Valley R. Co. v. United States*, 210 F. 735 (C.A.6 1914) (holding that a defendant may raise the claim that, because the indictment did not charge an offense no crime has been committed, for it is the settled rule that, despite a guilty plea, a defendant may urge such a contention in the reviewing court); *Carper v. State*, 27 Ohio St. 572, 575 (1875) (same).
> *Id.* (internal quotation marks removed).

In *Class*, the Court carefully delineated the types of post-plea challenges foreclosed by a prior admission of guilt. *See id.* at 804-07. For example, a post-plea factual challenge or a challenge contradicting the indictment, plea factual basis, or the admitted conduct could not be raised after the submission of a guilty plea. *See id.* at 804. However, "Class' constitutional claims" could proceed despite the guilty plea because they "d[id] not contradict the terms of the indictment or the written plea agreement. They are consistent with Class' knowing, voluntary, and intelligent

4

admission that he did what the indictment alleged. Those claims can be 'resolved without any need to venture beyond that record.'" *Id.* (quoting *United States v. Broce*, 488 U.S. 563, 569 (1989)).

Similar to *Class*, Mr. Moore does not contest the indictment's factual content, the facts adduced at his change of plea, or any portion of admitted conduct. In fact, at issue here is not Mr. Moore's conduct, but the continued vitality of § 924(a)(1)(A) considering the *Bruen* framework and the recent *Holden* ruling. Stated differently, at issue here is this Court's power to "impose the sentence" under the constitutionally suspect § 924(a)(1)(A). *Class*, 138 S. Ct. at 805. Plainly, should this Court find § 924(a)(1)(A), unconstitutional it would have no power to impose sentence.

In addition, the government cannot cure Mr. Moore's challenge here by seeking a superseding indictment, alleging new facts, or correcting a previous grand jury or other pretrial procedural deficiency. Simply, a new charging instrument or other pretrial correction cannot resolve the question presented here — whether the government retains the power constitutionally to prosecute offenders under § 924(a)(1)(A). *See id.* "In other words, [because Mr. Moore does] assert . . . constitutional immunity from prosecution" his facial challenge to § 924(a)(1)(A) may proceed at the post-plea phase before this Court applying the *Menna-Blackledge* doctrine. *United States v. Wheeler*, 857 F.3d 742, 745 (7th Cir. 2017). To rule otherwise, risks the imposition of a custodial sentence this Court may not retain the authority to mete.

A guilty plea "forgoes a fair trial [and] also other accompanying constitutional guarantees." *Class*, 138 S. Ct. at 805. A defendant pleading guilty also "simultaneously relinquishe[s] rights includ[ing] the privilege against compulsory self-incrimination, the jury trial right, and the right to confront accusers[;]" but a prior guilty plea does not encompass or include a "waiver of the privileges which exist *beyond the confines of the trial*." *Id.* (internal citation omitted) (emphasis

added). Here, Mr. Moore's facial challenge to § 924(a)(1)(A) "cannot be characterized as [solely] part of a trial" setting. *Id.* (internal citation omitted). Mr. Moore acknowledges that if a trial were held, he would be found guilty under § 924(a)(1)(A), consistent with his change of plea, the allegations set forth in the Indictment, and his overall *admitted* conduct. However, his facial challenge here, is not factually dependent, but rather turns on this Court's post-*Bruen* review and analysis of § 924(a)(1)(A)'s constitutional legitimacy. In that way, "[l]ike the defendants in *Blackledge* and *Menna*, [Mr. Moore] . . . seeks to raise a claim which, judged on its face based upon the existing record, would extinguish the government's power to constitutionally prosecute [him] if the claim were successful." *Id.* As a result, the Court should afford Mr. Moore an opportunity to raise his requested Second Amendment facial challenge to § 924(a)(1)(A) now.

      B.  *The Federal Rules Do Not Prohibit Mr. Moore's Dismissal Motion.*

The Federal Rules of Criminal Procedure do not preclude Mr. Moore from moving for dismissal now, post-plea.

First, though Mr. Moore did not pursue a conditional plea under Federal Rule of Criminal Procedure 11(a)(2), the Court has held that "Rule [11(a)(2)] itself does not say whether it sets forth the *exclusive* procedure for a defendant to preserve a constitutional claim following a guilty plea." Class, 138 S. Ct. at 806 (emphasis in original). The Court noted that the Rule 11 "drafters' notes acknowledge that the Supreme Court has held that certain kinds of constitutional objections may be raised after a plea of guilty. The notes . . . specifically refer to the *Menna–Blackledge* doctrine . . . [and state the] Rule should not be interpreted as either broadening or narrowing [that] doctrine" or "establishing procedures for its application." *Id.* (internal citation omitted). "And the notes state that Rule 11(a)(2) has no application to the kinds of constitutional objection that may be

raised under that doctrine." *Id.* Therefore, Mr. Moore was not required to seek a Rule 11(a)(2) carve-out to raise a constitutional facial attack to § 924(a)(1)(A) now applying *Menna-Blackledge*.

Second, though Mr. Moore entered into a plea agreement with a waiver provision, *see* Plea Agreement ¶ 7(e) [DE 19], if § 924(a)(1)(A), is facially constitutionally invalid, the government and the Court lack authority over the offense. Stated differently, if the Court finds the challenged statute unconstitutional, Mr. Moore's conviction, and indeed the entire proceeding, is rendered a legal nullity with the consequence of the government losing the continued authority to prosecute this matter to sentencing and depriving this Court the authority to impose sentence. *See Class*, 138 S. Ct. at 805.

Further, should this Court construe Mr. Moore's facial attack on § 924(a)(1)(A), as a motion for failure to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(v), he has shown the requisite "good cause" for not moving for dismissal pretrial. *See* Fed. R. Crim. P. 12(b)(3) (listing motions that must be raised pretrial); *see also* Fed. R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause.").

Specifically, *Bruen* was issued on June 23, 2022, almost three months after Mr. Moore's s guilty plea. Furthermore, and more importantly, Judge Miller did not issue *Holden* until October 31, 2022 — a mere four days ago. *Holden's* relevance and recency provide ample good cause to permit Mr. Moore's motion to dismiss to proceed after the pretrial phase.

2. <u>Under *Bruen*, § 924(a)(1)(A), facially violates the Second Amendment, as the statute proscribes the constitutionally protected conduct of firearm possession and is inconsistent with the nation's firearms' history and tradition.</u>
The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *In District of Columbia v. Heller*, the Supreme Court held the

7

Second Amendment enshrined a pre-existing *individual* right to possess and use firearms.  554 U.S. 570, 592, 624 (2008).  In *Bruen*, the Supreme Court held "consistent with *Heller* . . . the Second [Amendment] protect[s] an individual's right to carry a handgun for self-defense outside the home . . . ."  142 S. Ct. at 2122.

Two years after *Heller*, in *McDonald v. City of Chica*go, the Court reaffirmed Heller's "central holding."  561 U.S. 742, 780 (2010).  The Court reasoned that the right to keep and bear arms as "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition."  *Id.* at 767.  The Court cautioned that Second Amendment protections from state interference and regulation should not be treated "as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees."  *Id.* at 780.

Before *Bruen*, applying *Heller* and *McDonald*, reviewing courts "had coalesced around a two-step framework when assessing Second Amendment claims, combining a historical analysis with means-end scrutiny."  *United States v. Quiroz*, 4:22-cr-104-DC, Order, ECF No. 82, at p. 4 (W.D. Tex. Sept. 19, 2022) (internal citation omitted) (abrogating § 922(n) on Second Amendment grounds applying *Bruen*).

> But in *Bruen*, Justice Thomas stated the two-step[, means-end] approach was one step too many.  In its place, Justice Thomas [elucidated] a new standard courts must follow: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.  So[,] the threshold question is whether the Second Amendment's plain text covers Defendant's conduct.

*Id.* at 5 (internal citation omitted).  "Ultimately, as understood in 2022, the Second Amendment protects rights that are enshrined with the scope they were understood to have when the people adopted them."  *Holden*, 22-CR-30, ECF No. 32, at p. 6.

Applying the *Bruen* test, "the government may not simply posit that [a] regulation promotes an important interest." 142 S. Ct. at 2126. This test requires courts to "consider whether historical precedent . . . evinces a comparable tradition of regulation." *Id.* at 2131-32. If "no such tradition" exists, then the statute being challenged is unconstitutional. *Id.* at 2132. In the event that there are "multiple plausible interpretations" of an ambiguous historical record, a reviewing court must "favor the one that is more consistent with the Second Amendment's command." *Id.* at 2141 n.11; *see also id.* at 2139 (concluding that where "history [is] ambiguous at best," it "is not sufficiently probative to defend [a statute]"). The "[g]overnment bears the burden" of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127.

*A. Section 924(a)(1)(A) falls within the Second Amendment's Protective Ambit.*

As a threshold matter, it is crucial to understand § 924(a)(1)(A)'s regulatory scope. Section 924(a)(1)(A) criminalizes the act of "knowingly [making] any false statement or representation with respect to the *information required* by this chapter to kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter." (emphasis added). The "chapter" referred to in the statutory text is Chapter 44, Firearms, of the United States Criminal Code, *see* 18 U.S.C. §§ 921-934, and the "information required" from individual buyers or firearm transferees is found primarily in 18 U.S.C. § 922(s)(3). Specifically, under § 924(a)(1)(A), before a licensed firearm importer, dealer, or manufacturer (the "transferor") sells, delivers, or transfers a handgun to the buyer (the "transferee") the transferor must obtain the "required information" from the transferee through a statement and verify the transferee's identity "by examining" the presented identification documentation. 18 U.S.C. 922(s)(1)(A)-(B); *see also* § 922(s)(3)(A)-(D).

In that way, § 924(a)(1)(A) regulates a transferee's constitutionally protected right of *firearm possession*. Again, *before* a transferee receives and takes possession of a handgun, he must provide a statement of required information, found in § 922(s)(3), and present an identification document. If the transferee knowingly provides false information in the required information statement, the transferee's subsequent possession is criminalized under § 924(a)(1)(A). Therefore, the Second Amendment's plain text facially covers or addresses the individual conduct at issue in § 924(a)(1)(A) – the regulatory means, process, and potential consequences by which the transferee may *possess and receive* a handgun. That 924(a)(1)(A) regulates the transferee's firearm possessory interests results in the statute facially falling within the Second Amendment's plain text. Stated differently, that § 924(a)(1)(A) "*burdens* activity protected by the Second Amendment" the right to keep and bear arms – possession or receipt – it falls within the protective Second Amendment framework. *Holden*, 22-CR-30, ECF No. 32, at p. 10 (emphasis added); *see also Quiroz*, 4:22-cr-104-DC, ECF No. 82, at pp. 3-4 (holding that "to keep and bear Arms" includes receiving firearms). As a result, given that § 924(a)(1)(A) burdens firearm possession, it falls within the Second Amendment's protective ambit.

> B. *Section 924(a)(1)(A)'s Regulatory Scope is Inconsistent with the Nation's Firearms History and Tradition.*

The second *Bruen* step is an inquiry into whether the contested firearm regulation comports with the nation's firearms' history and tradition. The government may overcome this presumption only by "affirmatively proving that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Holden*, 22-CR-30, ECF No. 32, at p. 5 (internal citation omitted).

Applying *Bruen*, "[h]istorical evidence that long predates [the ratification] . . . may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years."

142 S. Ct. at 2136.  "Any modern regulation that does not comport with the historical understanding of the right is to be deemed unconstitutional, regardless of how desirable or important that regulation may be in our modern society." *United States v. Price*, 22-CR-97, ECF No. 48, at p. 8 (S.D. W.V. Oct. 12, 2022).

> If the challenged regulation addresses a societal problem that's been around since the ratification of the Second Amendment, the lack of a distinctively similar historical regulation addressing that problem suggests the regulation doesn't fit in the history and tradition of firearm regulation, so is unconstitutional. Id. at 2131. In the same vein, if earlier generations addressed the societal problem, *but did so through materially different means the regulation is probably unconstitutional*.

*Holden*, 22-CR-30, ECF No. 32, at p. 5 (internal citations omitted) (emphasis added).

Therefore, "the crux of the historical inquiry is to determine the understanding of the right at the time it was enshrined in the Constitution." *Price,* 22-CR-97, ECF No. 48, at p. 8. "Courts 'are not obliged to sift the historical materials for evidence to sustain [a] statute. That is [the Government's] burden.'" *Id.* at 10 (quoting *Bruen*, 142 S. Ct. at 2150.).

As stated above, § 924(a)(1)(A) criminalizes providing knowingly false information with respect to the "information required" in Chapter 44, which includes the statement of information a handgun transferee must provide before taking possession and receipt of the requested firearm. *See* § 922(s)(3)(A)-(D).  The "information required" in the transferee statement includes:

> (A) the name, address, and date of birth appearing on a valid identification document (as defined in section 1028(d)(1)) of the transferee containing a photograph of the transferee and a description of the identification used;
>
> (B) a statement that the transferee—
>
> > (i) is not under indictment for, and has not been convicted in any court of, a crime punishable by imprisonment for a term exceeding 1 year, and has not been convicted in any court of a misdemeanor crime of domestic violence;
> >
> > (ii) is not a fugitive from justice;

>(iii) is not an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act);
>
>(iv) has not been adjudicated as a mental defective or been committed to a mental institution;
>
>(v) is not an alien who—
>
>>(I) is illegally or unlawfully in the United States; or
>>
>>(II) subject to subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));
>
>(vi) has not been discharged from the Armed Forces under dishonorable conditions; and
>
>(vii) is not a person who, having been a citizen of the United States, has renounced such citizenship;
>
>(C) the date the statement is made; and
>
>(D) notice that the transferee intends to obtain a handgun from the transferor.

§ 922(s)(3)(A)-(D).

Effectively, § 924(a)(1)(A) regulates *ex ante* possession and receipt of a firearm through imposing an information requirement regarding and addressing among other things, first and foremost, a statement on indictment status (the same as 18 U.S.C. § 922(n), found unconstitutional in *Holden*); conviction status (the same as 18 U.S.C. § 922(g)(1) (felonies convictions) and 18 U.S.C. § 922(g)(9) (specified misdemeanor convictions)); controlled substance addiction or use (the same as 18 U.S.C. § 922(g)(3)); mental health adjudications (the same as 18 U.S.C. § 922(g)(4)); fugitive status (the same as 18 U.S.C. § 922(g)(2)); military discharge status (the same as 18 U.S.C. § 922(g)(6)); and alienage and citizenship status (the same as 18 U.S.C. § 922(g)(5) and (g)(7)).

At this second step of the *Bruen* analysis, the government will not be able to proffer evidence showing a national firearm history and tradition from the time of the founding supporting § 924(a)(1)(A)'s multiple "required information" restrictions on firearm possession and receipt. Indeed, Judge Miller has already found that firearm possessory restrictions or burdens based on nothing more than a filed indictment, *see* § 922(n), fail the constitutional history and tradition scrutiny test set forth in *Bruen*. *See, e.g., Holden*, 22-CR-30, ECF No. 32, at p. 10 (internal citations omitted) (holding that "Section 922(n) burdens activity protected by the Second Amendment, and the government hasn't shown that the regulation is consistent with the history and tradition of firearm regulation that delimits the outer bounds of the right to keep and bear arms. Under the new Second Amendment standard, § 922(n) is unconstitutional."); *see also e.g.*, *Quiroz*, 4:22-cr-104-DC, ECF No. 82, at p. 25 (holding that the "Second Amendment is not a second class right. No longer can courts balance away a constitutional right. After *Bruen*, the Government must prove that laws regulating conduct covered by the Second Amendment's plain text align with this Nation's historical tradition. The Government does not meet that burden. Although not exhaustive, the Court's historical survey finds little evidence that § 922(n)—which prohibits those under felony indictment from obtaining a firearm—aligns with this Nation's historical tradition. As a result, this Court holds that § 922(n) is unconstitutional."). Section 924(a)(1)(A), like § 922(n), facially criminally regulates and burdens firearm receipt and possession, constitutionally protected conduct, based on nothing more than a filed charge. For that reason, § 924(a)(1)(A) cannot survive the *Bruen* framework and is no longer an appropriate firearm regulation.

The government may offer *United States v. Lawton* 366 F.3d 550 (7th Cir. 2004), as potential authority in support of § 924(a)(1)(A)'s continued constitutional viability. However, as noted in *Holden*, *Lawton* was decided long before *Bruen* and the revised, exacting Second

Amendment test the Supreme Court now demands.  22-CR-30, ECF No. 32, p. 12.  Furthermore, that § 924(a)(1)(A) arguably regulates broadly only reinforces Mr. Moore's facial argument that the statute imposes undue and historically unsupported firearm regulations, including imposing regulations implicating the firearm possessory rights of charged, but not necessarily convicted, persons:  the very status the analysis in *Holden* focused.

Finally, it is important to emphasize that Mr. Moore carries no burden here.  The government, applying *Bruen*, carries the burden to establish that § 924(a)(1)(A) satisfies the history and tradition scrutiny test.  *See, e.g.*, *Price,* 22-CR-97, ECF No. 48, at p. 14 (internal citations omitted) (reasoning that the "burden falls on the Government to affirmatively prove that its firearms regulation is part of the or analogous to a historical tradition that delimits the outer bounds of the right to keep and bear arms.").  Now that Mr. Moore has facially challenged § 924(a)(1)(A), this Court should not, indeed cannot, sentence him until the government has satisfied its constitutional burden – a burden it cannot carry here.

## Conclusion

Mr. Moore respectfully requests that the Court grant his motion to dismiss, as  § 924(a)(1)(A) facially violates the Second Amendment and imposing a sentence pursuant to the statute would violate Mr. Moore's constitutional rights and result in this Court imposing a sentence without constitutional authorization.

*Date:* November 4, 2022

           Respectfully submitted,

           Northern District of Indiana
           Federal Community Defenders, Inc.

           By: s/ Peter L. Boyles
              Peter L. Boyles
              2929 Carlson Drive, Suite 101
              Hammond, IN   46323
              Phone:  (219) 937-8020
              Fax:  (219) 937-8021
              Email: Peter_Boyles@fd.org

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on November 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

                s/ Peter L. Boyles